## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

IN RE:

**KEVIN CHANDLER MARTIN**                    **CASE NO.:  18-50157-KKS**
                                            **CHAPTER 7**

    **DEBTOR.**

_____/

### AMENDED MOTION FOR *IN REM* RELIEF FROM AUTOMATIC STAY

<div style="border:1px solid">

NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING

Pursuant to Local Rule 2002-2, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within 21days from the date set forth on the proof of service plus an additional three days for service if any party was served by U.S. Mail, or such other period as may be specified in Fed. R. Bankr. P. 9006(f).

If you object to the relief requested in this paper, you must file an objection or response electronically with the Clerk of the Court or by mail at 110 E. Park Avenue, Suite 100, Tallahassee, FL, 32301 and serve a copy on the movant's attorney, J. Christopher Barr, P.O. Box 860, Panama City, Florida 32402, and any other appropriate person within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.

If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

</div>

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, AMERIS BANK, a Georgia corporation, successor in interest by merger of PROSPERTITY BANK (hereinafter the "Movant"), by and through its undersigned counsel, and moves for *in rem* relief from the automatic stay, pursuant to 11 USC §362(d), and support states as follows:

1.      On May 29, 2018, the Debtor filed for relief under Chapter 7 of the United States Bankruptcy Code.

2.      Jurisdiction in this cause is granted to the Bankruptcy Court pursuant to 28 USC §1334, and 11 USC §362, and all other applicable rules and statutes affecting the jurisdiction of the United States Bankruptcy Court generally.

3.      On December 23, 2013, Movant became the successor in interest as the surviving corporation of its merger with Prosperity Bank pursuant to the Articles of Merger filed with the Florida Department of State on December 20, 2013 (the "Articles of Merger").  A true and correct copy of the Articles of Merger are attached hereto and incorporated herein as **Exhibit A.**

4.      On or about March 30, 2007, Mr. Martin executed and delivered to Prosperity Bank  (predecessor in interest to the Plaintiff) a Consumer Real Estate Secured Note (hereinafter the "Original Note") in the principal amount of $151,291.14 (hereinafter the "Loan").  A true and correct copy of the Original Note is attached hereto and incorporated herein as **Exhibit B**.

5.      On or about March 30, 2007, Mr. Martin executed and delivered to

Prosperity Bank (predecessor in interest to the Plaintiff) a Mortgage in the original principal amount of $151,291.14 (hereinafter the "Mortgage") securing the Loan and Original Note. The Mortgage was recorded April 26, 2007 in Official Records Book 436, Page 773, in the Public Records of Gulf County, Florida. A true and correct copy of the Mortgage is attached hereto and incorporated herein as **Exhibit C.**

6.     The Mortgage encumbers that certain real property located in Gulf County, Florida including improvements without limitation the 2003 Power Doublewide, VIN CV03AL0260419B (hereinafter the "Doublewide") and real property located at 280 Cary Whitfield Road, Wewahitchka, Florida 32465 being more particularly described as follows:

See attached **Exhibit D**

Hereinafter the "Property".

7.     On or about March 30, 2007, Mr. Martin executed and delivered to Prosperity Bank (predecessor in interest to the Plaintiff) a Consumer Security Agreement (hereinafter the "Security Agreement") further securing the Promissory Note and Loan. A true and correct copy of the Security Agreement is attached hereto and incorporated herein as **Exhibit E**.

8.     On or about October 27, 2011, Mr. Martin refinanced the Loan and executed and delivered to  Prosperity Bank (predecessor in interest to the Plaintiff)

3

a Consumer Real Estate Secured Balloon Note (hereinafter the "2011 Note") which renewed the Loan and renewed and replaced the Original Note. A true and correct copy of the 2011 Note is attached hereto and incorporated herein as **Exhibit F**.

9.    On or about April 11, 2013, Mr. Martin executed and delivered to Prosperity Bank (predecessor in interest to the Plaintiff) a Commercial Promissory Note in the principal amount of $138,942.54, with a maturity date of March 30, 2018 (hereinafter the "Operative Promissory Note") which renewed the Loan and renewed and replaced the 2011 Note. A true and correct copy of the Operative Promissory Note is attached hereto and incorporated herein as **Exhibit G**.

10.    On or about April 11, 2013, Mr. Martin executed and delivered to Prosperity Bank   (predecessor in interest to the Plaintiff) a Business Loan Agreement further evidencing the Loan (hereinafter the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto and incorporated herein as **Exhibit H.**

11.    On or about April 11, 2013, Mr. Martin executed and delivered to Prosperity Bank (predecessor in interest to the Plaintiff) an Assignment of Leases and Rents further securing the repayment of the Loan and Operative Promissory Note. A true and correct copy of the Assignment of Leases and Rents is attached hereto and incorporated herein as **Exhibit I**.

12.    The Mortgage, Security Agreement, Operative Promissory Note, Loan

Agreement, and Assignment of Leases and Rents are hereinafter collectively referred to as the "Loan Documents."

13.    The Property is not listed as exempt on the Debtor's Schedule C filed with Debtor's Voluntary Petition.

14.    Debtor is in default pursuant to the Loan Documents.  The Debtor failed to pay the balance of the Loan owed on or since the maturity date of March 30, 2018.

15.    Pursuant to the Statement of Intention filed by the Debtor, the Debtor intends to surrender the Property.  The Affidavit in Support of the Motion for Relief from Stay is attached by the Movant as **Exhibit J** hereto.

16.    The value of the Property is estimated by the Debtor to be $98,208.00 as evidenced by Schedule D to the Debtor's Petition.

17.    The value of the Property is insufficient to provide adequate protection to the Movant.  It would be inequitable to permit the Debtor to retain the Property, as there is no equity in the Property and it is not necessary for an effective reorganization.

18.    Furthermore, the Movant is not receiving any payment from Debtor to protect against the further reduction or erosion of its collateral position in the Property.

19.    If Movant is not permitted to enforce its security interest in the

Property or provided with adequate protection, it will suffer irreparable harm, injury, loss and damage.

20.    Once the stay is terminated, Debtor will have minimal motivation to insure, preserve or protect the Property.  Therefore, Movant requests that the Court waive the 14-day stay imposed by Fed. R. Bankr. P. 4001(a)(3).

**WHEREFORE**, Movant respectfully requests that the Court enter an Order:

a.    terminating the automatic stay, *in rem*; and

b.    permitting the Movant to take any and all steps necessary to exercise any and all rights it may have in the Property described herein; and

c.    allowing Movant to gain possession of the Property; and

d.    waiving the 14-day stay imposed under Fed. R. Bankr. P. 4001(a)(3); and

e.    granting such further relief as the Court deems proper and just.

        */s/ J. Christopher Barr, Esq.*
J. Christopher Barr Esq.
Fla. Bar No.: 17937
BRYANT, HIGBY, & BARR,
CHARTERED
833 Harrison Avenue (32401)
Post Office Box 860
Panama City, Florida  32402
Telephone (850)763-1787
cbarr@bryanthigby.com
jarmstrong@bryanthigby.com
**Attorney for Movant**

6

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Amended Motion for *In Rem* Relief from Automatic Stay was served by Notice of Electronic Filing to Charles M. Wynn, attorney for Debtor, Kevin Chandler Martin at candy@wynnlaw-fl.com; Trustee Mary W. Colon at trustee@marycolon.com and fl33@ecfcbis.com, and the United States Trustee, USTPRegion21.TL.ECF@usdoj and by U.S. Mail to PRA Receivables Management, LLC, P.O. Box 41021, Norfolk, VA 23541 on this __18__ day of July, 2018.

/s/ *J. Christopher Barr, Esq.*
J. Christopher Barr, Esq.
Fla. Bar No.: 17937
BRYANT, HIGBY, & BARR,
CHARTERED
833 Harrison Avenue (32401)
Post Office Box 860
Panama City, Florida  32402
Telephone (850)763-1787
cbarr@bryanthigby.com
jarmstrong@bryanthigby.com
**Attorney for Movant**



**EFFECTIVE DATE**
12-23-13

**ARTICLES OF MERGER
OF
PROSPERITY BANK
INTO
·AMERIS BANK**

FILED

2013 DEC 20  PM 4: 29

SECRETARY OF STATE
TALLAHASSEE. FLORIDA

Pursuant to the provisions of Section 607.1105 of the Florida Business Corporation Act (the "Act"), Ameris Bank, a Georgia state-chartered bank, and Prosperity Bank, a Florida banking corporation, do hereby adopt the following Articles of Merger:   ·

FIRST: The names of the corporations which are parties to the merger (the "Merger") contemplated by these Articles of Merger are Ameris Bank and Prosperity Bank. The surviving corporation in the Merger is Ameris Bank.

SECOND:  The Plan of Merger is set forth in the Bank Plan of Merger and Merger Agreement by and between Ameris Bank and Prosperity Bank dated as of May 21, 2013 (the "Merger Agreement").  A copy of the Merger Agreement is attached hereto and made a part hereof by reference as if fully set forth herein.

THIRD: The Merger shall become effective at 12:01 a.m. EST on December 23, 2013 in accordance with the provisions of Section 607.1105(b) of the Act.

FOURTH:  The Merger Agreement was adopted by the board of directors of Ameris Bank on May 21, 2013 and by the sole shareholder of Prosperity Bank on April 26, 2013. Ameris Bank shareholder approval was not required.

[Signature page follows.]

841441



EXHIBIT

_A_

IN WITNESS WHEREOF, the parties have caused these Articles of Merger to be executed effective as of December 20, 2013.

**AMERIS BANK**

By: _Edwin W. Hortman_

    Edwin W. Hortman, Jr.
    Chief Executive Officer

**PROSPERITY BANK**

By: _James E. Creamer_

    James E. Creamer, Jr.
    President and Chief Executive Officer

2

Bank Plan of Merger and Merger Agreement

(See attached.)

841441

## BANK PLAN OF MERGER AND MERGER AGREEMENT

This Bank Plan of Merger and Merger Agreement (this "Agreement") is made and entered into as of the 21st day of May, 2013, by and between Ameris Bank, a Georgia state-chartered bank (the "Surviving Bank"), and Prosperity Bank, a Florida state-chartered bank (the "Merging Bank") (the Merging Bank and the Surviving Bank are hereinafter collectively referred to as the "Constituent Banks").

### RECITALS

WHEREAS, Ameris Bancorp, a Georgia corporation and the sole shareholder of the Surviving Bank ("Ameris"), and The Prosperity Banking Company, a Florida corporation and the sole shareholder of the Merging Bank ("Prosperity"), have entered into that certain Agreement and Plan of Merger dated as of May 1, 2013 (the "Holding Company Agreement"), pursuant to which Prosperity would be merged with and into Ameris (the "Company Merger");

WHEREAS, the Boards of Directors of the Constituent Banks deem it advisable and for the benefit of the Constituent Banks that the Merging Bank merge with and into the Surviving Bank immediately upon, and subject to, the consummation of the Company Merger (the "Merger"); and

WHEREAS, the Financial Institutions Code of Georgia (the "Code") authorizes the merger of a bank organized under the Code and a bank having a different home state, subject to applicable provisions of the Code and the approval of such merger by the Department of Banking and Finance of the State of Georgia (the "Department");

NOW, THEREFORE, for and in consideration of the premises and other mutual agreements, covenants, representations and warranties contained herein, the parties hereto agree as follows:

### 1.
### MERGER; EFFECTIVE TIME

1.1    Merger. At the Effective Time (as hereinafter defined), the Merging Bank shall be merged with and into the Surviving Bank, in accordance with the Code. The Surviving Bank shall survive the Merger, the separate existence of the Merging Bank shall cease and the Merger shall in all respects have the effect provided for in the applicable provisions of the Code.

1.2    Effective Time.    Subject to the consummation of the Company Merger in accordance with the Holding Company Agreement, Articles of Merger evidencing the transactions contemplated herein shall be delivered to the Department for filing in accordance with the Code. The Merger shall be effective upon the issuance of a certificate of merger with respect thereto by the Secretary of State of the State of Georgia (the "Effective Time").

## II.
## NAME OF SURVIVING BANK; ARTICLES OF
## INCORPORATION; BYLAWS; DIRECTORS; OFFICERS

2.1     Name of Surviving Bank. The name of the Surviving Bank shall be "Ameris Bank" or such other name as the Surviving Bank shall be operating under immediately prior to the Effective Time.

2.2     Articles of Incorporation of the Surviving Bank. The Articles of Incorporation of the Surviving Bank in effect at the Effective Time shall (until further amended) continue to be the Articles of Incorporation of the Surviving Bank.

2.3     Bylaws of the Surviving Bank. The Bylaws of the Surviving Bank in effect at the Effective Time shall (until further amended) continue to be the Bylaws of the Surviving Bank.

2.4     Directors of the Surviving Bank. At the Effective Time, the directors of the Merging Bank immediately prior thereto shall cease to hold office, and each director of the Surviving Bank immediately prior thereto shall remain a director of the Surviving Bank and shall thereafter hold such office for the remainder of his or her term of office and until his or her successor has been elected and qualified, or as otherwise provided in the Articles of Incorporation or the Bylaws of the Surviving Bank or by the Code.

2.5     Executive Officers of the Surviving Bank. At the Effective Time, the executive officers of the Merging Bank immediately prior thereto shall cease to hold office, and each executive officer of the Surviving Bank immediately prior thereto shall remain an executive officer of the Surviving Bank, and each of the foregoing shall thereafter hold such office for the remainder of his or her term of office and until his or her successor has been elected or appointed and qualified, or as otherwise provided in the Articles of Incorporation or the Bylaws of the Surviving Bank or by the Code.

## III.
## SECURITIES

The shares of the capital stock of the Constituent Banks shall be converted as follows:

3.1     Stock of the Surviving Bank. At the Effective Time, each share of the common stock of the Surviving Bank issued and outstanding immediately prior to the Effective Time shall remain outstanding, shall be unaffected by the consummation of the Merger and shall continue to be held by Ameris.

3.2     Stock of the Merging Bank. At the Effective Time, each share of the common stock of the Merging Bank issued and outstanding immediately prior to the Effective Time shall, by virtue of the Merger and without any action by the holder thereof, be extinguished.

## IV.
## GENERAL

4.1     Approval of Shareholders and the Department. This Agreement is subject to approval by the shareholders of the Constituent Banks and by the Department.

2

4.2    Necessary Action.  The directors and officers of the Constituent Banks shall carry out and consummate this Agreement and shall have the power to adopt all resolutions, execute and file all documents and take all other actions that they may deem necessary or desirable for the purpose of effecting the merger of the Constituent Banks in accordance with this Agreement and the Code.

4.3    Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and it shall not be necessary in making proof of this Agreement or the terms hereof to produce or account for more than one of such counterparts. Executed counterparts may be delivered by facsimile or other electronic transmission.

4.4    Termination.    This Agreement may be terminated at any time prior to consummation of the transactions contemplated by the Holding Company Agreement by written consent of the parties hereto, and this Agreement shall be automatically terminated upon termination of the Holding Company Agreement.

[Remainder of page intentionally left blank; signature page follows.]

3

IN WITNESS WHEREOF, each of the parties to this Agreement has caused this Agreement to be signed and delivered by its duly authorized officers, as of the date first written above.

ATTEST:                                          AMERIS BANK

Cara P. Stone                                    By: _Edward W. Hortman_
Secretary / Asst. Corporate Secretary            Its: _Chief Executive / Officer_

            [CORPORATE SEAL]


ATTEST:                                          PROSPERITY BANK

_____                 By:_____
Secretary                                        Its:_____

            [CORPORATE SEAL]


[Signature Page to Bank Plan of Merger and Merger Agreement]

IN WITNESS WHEREOF, each of the parties to this Agreement has caused this Agreement to be signed and delivered by its duly authorized officers, as of the date first written above.

ATTEST:                                          AMERIS BANK

_____                          By:_____
Secretary                                        Its:_____

        [CORPORATE SEAL]


ATTEST:                                          PROSPERITY BANK

_____                          By:_____
Secretary                                        Its: Chairman of the Board

        [CORPORATE SEAL]

EXHIBIT B

**CONSUMER REAL ESTATE SECURED NOTE**

**Prosperity Bank**
**100 South Park**
**St. Augustine, Florida 32086**
**(800)347-9680**

| LOAN NUMBER | MATURITY DATE | PRINCIPAL AMOUNT | TRANSACTION DATE | INTEREST RATE |
|---|---|---|---|---|
| [redacted]7030 | March 30, 2027 | $151,291.14 | March 30, 2007 | 6.696% |

**LOAN PURPOSE: Personal Expenses**

## BORROWER INFORMATION

**Kevin Chandler Martin**
**PO Box 328**
**Wewahitchka, FL 32465**

**NOTE.** This Consumer Real Estate Secured Note will be referred to in this document as the "Note" or as the "Agreement."

**LENDER.** "Lender," "you," or "your" means **Prosperity Bank**, its successors and assigns, whose address is **100 South Park, St. Augustine, Florida 32086** .

**BORROWER.** "Borrower," "I," "me," "my," or "mine" means each person who signs this Note.

**PROMISE TO PAY.** I promise to pay, according to the terms below, on or before the Maturity Date, the principal amount of **One Hundred Fifty-one Thousand Two Hundred Ninety-one and 14/100 Dollars ($151,291.14)** and all interest and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. I will make all payments under this Note in the form of cash, check or money order in lawful United States Dollars. I understand that Lender may transfer this Note. The Lender, or anyone who takes this Note by transfer and who is entitled to receive payments under this Note, is called the "Note Holder."

**PAYMENT SCHEDULE.** This loan will be paid according to the following schedule: **239** consecutive payments of principal and interest in the amount of **$1,154.54** beginning on **April 30, 2007** and continuing on the same day of each month thereafter. This will be followed by **1** payment of principal and interest in the amount of **$1,151.31** on **March 30, 2027**. The unpaid principal balance of Note, together with all accrued interest and charges owing in connection therewith, shall be due and payable on the Maturity Date. All payments received by the Lender from the Borrower for application to the Loan may be applied to the Borrower's obligations under the Loan in such order as determined by the Lender.

**PAYMENTS.** My payments are to be made according to the payment schedule shown on this Note in lawful United States dollars until I have paid all of the principal and interest and any other charges that I may owe under this Note. I will make my payments at your address as shown on this Note or at a different place if required by you. You may accept late or partial payments as well as payments marked "payment in full" or with other restrictive endorsements without losing any of your rights under this Note and without affecting the unpaid balance of my loan as reflected on your records. You may apply my payments to amounts owing in whatever order you choose unless a specific order is required by law.

**INTEREST RATE AND SCHEDULED PAYMENT CHANGES.** The interest rate on this Note will be fixed at **6.696%** per annum.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. Interest on this Note is calculated on a 365/360 day basis. The unpaid balance of this loan after Maturity, whether by acceleration or otherwise, shall be subject to a Post-Maturity Rate of interest equal to **18.000%** per annum.

**INTEREST RATE AND EARLY PAYMENT REBATES.** Interest will be assessed on the outstanding balance of my loan from time to time. Interest will begin to accrue on **March 30, 2007**.

If my payments, as described in the section Payment Schedule, are such that my regular payment will cause the Amount Financed to be reduced during the term on my loan, then if I make payments early, there will be a decrease in the interest charged for my loan and if I make payments later than the due date, there will be an increase in the amount of interest that I will pay. To the extent required by law, unearned interest and/or other finance charges will be refunded if I pay my loan off early.

If the interest rate assessable under the terms of this Note, or any other fee or charge called for exceeds permitted limits, as interpreted by applicable law, then such rate, fee, or charge will be reduced to the permitted limit. As selected by you, any excessive amount already paid by me will be credited to my loan or refunded to me. The effect of this is intended to be construed as equivalent to the excessive rate, fee, or charge not having been paid or payable at all.

**SECURITY.** This Note, and any extensions or renewals of this Note, is secured by a Mortgage or Deed of Trust or Security Deed on real property dated **March 30, 2007** (the "Security Instrument"). The real property that is the subject of the Security Instrument shall be called "Property" in this Note. The Security Instrument protects you from possible losses which might result if I do not keep my promises under this Note, and describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.

In addition to the Security Instrument described above, the following described additional collateral has been pledged to secure this Note:

© 2004-2006 Copyright Compliance Systems, Inc. BBCF-D125 - 2006.05.155

- **Manufactured Home** - 2003 Power Doublewide - ID#CV03AL0260419A as evidenced by the Security Agreement dated **March 30, 2007.**
- **Vehicle** - 2003 Power Doublewide - ID#CV03AL0260419B as evidenced by the Security Agreement dated **March 30, 2007.**

The above-described additional collateral shall be called "Collateral" in this Note.

I have given no other Collateral for my loan. Except for your security interest or lien, the Collateral is owned free and clear from any security interest, lien, or other adverse claim other than as now disclosed to you. I will not allow any other security interest, lien, or adverse claim to attach to the Collateral.

I agree that I will fully cooperate with you in placing and maintaining your security interest or lien in the Collateral. I authorize you to file a conforming Financing Statement or other similar document to perfect your security interest in the Collateral. I agree that I will execute any documents necessary for you to perfect your security interest or lien, and grant you a power of attorney to file or execute any document on my behalf that is necessary to obtain or maintain your security interest in the Collateral.

I will not sell or otherwise transfer ownership of the Collateral. I will not use the Collateral for any unlawful purpose. I will keep the Collateral in good repair.

I promise to pay any taxes or assessments on the Collateral as they come due. If I fail to pay them, you may pay them at your option to protect your interest and I agree to pay you for your expense. If I fail to pay you, and if permitted by law, you may add the protective advance to the balance owing under this Note.

**LATE PAYMENT CHARGE.** If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of **5.000%** of the amount past due.

**PREPAYMENT PENALTY.** This Note may be prepaid, in full or in part, at any time, without penalty.

**ASSUMPTION.** Someone buying my dwelling will not be allowed to assume the remainder of my loan on the original terms.

**HAZARD OR PROPERTY INSURANCE.** I will insure the Property through a company of my choice subject to your reasonable approval, as set forth in the Security Instrument. I will insure the Collateral through a company of my choice subject to your reasonable approval. You will be named as loss payee or, at your request mortgagee, for your protection. This insurance will protect the Collateral against loss by theft, fire and collision, perils within the term "comprehensive" to the extent applicable, and as otherwise required by you. It will also provide "all risks" Hull insurance as to any Collateral which is an aircraft or boat and related accessories when applicable. I will deliver satisfactory evidence of such insurance to you.

If I fail to insure the Collateral, you may do so at your option to protect your interest, and you may include any other coverage you feel appropriate, and I agree to pay you for any premiums. If I fail to pay you, and if permitted by law, you may add the protective advance to the balance owing under this Note. You may increase the amount of my regular payment in order to amortize the added insurance premiums by the time my final payment is due or, alternatively, I will end up having a larger final payment.

**MATURITY DATE.** The unpaid balance owed under this Note is due and payable on **March 30, 2027** ("Maturity Date") regardless of any other provision of this Note or other related document.

**RETURNED CHECK FEE.** Checks or drafts in payment of amounts owing hereunder which are returned to Lender unpaid are subject to a returned check fee equal to: (a) the actual amount Lender is charged by the institution returning the check, draft, or order; or (b) **$32.00**; or (c) such other amount as shall be allowed by applicable law from time to time; whichever is the greatest; provided, however, the amount of the returned check fee will not exceed the maximum amount allowed by applicable law from time to time. At Lender's discretion, and after any notice required by applicable law, Lender may add such fee to the balance owing under this Note.

**DEFAULT.** I will be in default and you may, to the extent permitted by law, declare the entire unpaid balance of this loan immediately due and payable if: (a) I do not keep any promise or perform any obligation under this Note or any other contract or Note that I may have with you; or (b) I give you false or misleading information in order to obtain, or while I owe on this loan; or (c) I should die or become involved in any bankruptcy, receivership, insolvency, or custodial proceedings brought by or against me; or (d) I should have a judgment or tax lien filed against me or any attachment or garnishment should be issued against any of my property or rights, specifically including anyone starting an action or proceeding to seize any funds that I may have on deposit with you; and/or (e) you, in good faith, reasonably believe my ability to repay the indebtedness owed under this loan, any Collateral, or your ability to resort to any Collateral, is or soon will be impaired, time being of the very essence.

If permitted by law, I waive any otherwise required notice of: presentment; demand; acceleration; and, intent to accelerate.

If I am in default, to the extent permitted by law, without any prior notice or demand, unless required by law, I will have to pay the entire unpaid balance of this loan and you may invoke any other remedies permitted by applicable law or, at your option, I agree to give you the Collateral, if any. If I do not give you the Collateral, then to the extent permitted by law, you may enter the premises where the Collateral is located and take possession of it. You may assert the defense of a superior right of possession as the holder of a security interest to any allegation by me of wrongful taking and conversion. If permitted by law, I waive any right I might otherwise have to a hearing prior to a court issuing a replevin order in relation to the Collateral.

To the extent permitted by law, I agree to pay all reasonable agent or attorney fees incurred by you in collecting the debt evidenced by this Note or in the taking of the Collateral.

In the event of default, suit, and judgment against me, you have the right to attach or garnish wages. I expressly waive any limitation to the contrary unless the law prohibits such waiver.

You may sell or dispose of the Property and/or Collateral, in any manner permitted by law. After appropriate application of the proceeds of any sale, I will be liable to pay any resulting deficiency on my loan to you, to the extent permitted by law. In taking possession of the Collateral, you may come into possession of certain of my personal property. In that event, you may hold such property for whatever period of time you feel is reasonable. If I do not claim my property during such hold period, you may dispose of it without any liability to me.

**LIABILITY OF PARTIES; JOINT AND SEVERAL LIABILITY.** Every person signing this Note as a Borrower understands and agrees that they are jointly and individually obligated to pay all amounts owed according to the terms and conditions of this Note.

**NOTICE OF DEFAULT.** If I am in default, the Lender may send me a written notice, consistent with applicable law, if any, telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the then unpaid balance in full.

**SET OFF.** To the extent permitted by law, I give you the right to setoff any of my money or property which may be in your possession against any amount owing under this Note. This right of setoff does not extend to any IRA, Keogh accounts or similar tax deferred deposit accounts that I may have with you.

**OTHER PROMISES.** Reference is made to any related mortgage, trust deed, security deed, assignment, security agreement, pledge or similar document for other promises which I make to you and for terms and conditions governing my loan, which promises, terms and conditions are made a part of this Note as if set forth herein.

**FORBEARANCE.** You do not lose your rights under this Note if you delay enforcing them. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**GIVING OF NOTICES.** Notice(s) must be given to me by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Lender a notice of my different address, unless applicable law requires a different method.

Notice(s) that must be given to the Lender will be given by mailing it by first class mail to the Lender at the address referred to above or at a different address if I am given a notice of that different address by the Lender.

**ASSIGNABILITY.** You may assign any of your rights under this Note without my consent. I may not assign my obligations.

**SEVERABILITY.** If any provision of this Note is determined to be unenforceable or invalid by a court of competent jurisdiction, all other provisions shall remain in full force and effect.

**HEADINGS.** The headings preceding text in this Note are for my general convenience in identifying subject matter, but have no limiting impact on the text which follows any of the particular heading.

**GOVERNING LAW.** I understand and agree that this Note will be governed by the laws of the State of Florida except to the extent that federal law controls.

**ATTORNEYS' FEES AND OTHER COSTS.** If legal proceedings are instituted to enforce the terms of this Agreement, Borrower agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees, to the extent permitted by law.

**DOCUMENTARY STAMP TAX.** The Florida Documentary Stamp Tax, as required by law, in the amount of $529.55, has been paid.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

By signing this Note, each Borrower acknowledges reading, understanding and agreeing to all its provisions.

_Kevin Chandler Martin_    _3/30/07_
Kevin Chandler Martin                Date



773

GCL#070032

Inst:002003717 Date:04/26/2007 Time:11:44
Doc Stamp-Mort :     529.55
Intang. Tax    :     302.57
_____ Ot.Rebecca L. Norris,GULF County B:436 P:773

LOAN NUMBER: XXXXXX7030

(Space Above This Line For Recording Data)

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is made on **March 30, 2007**. The mortgagor is **Kevin Chandler Martin, a single person**, whose address is **PO Box 328, Wewahitchka, Florida 32465** ("Borrower"). Borrower is not necessarily the same as the Person or Persons who sign the Note. The obligations of Borrowers who did not sign the Note are explained further in the section titled **Successors and Assigns Bound; Joint and Several Liability; Accommodation Signers.** This Security Instrument is given to **Prosperity Bank**, which is organized and existing under the laws of the State of Florida and whose address is **P.O. Drawer 1690, Saint Augustine, Florida 32085** ("Lender"). **Kevin Chandler Martin** owes Lender the principal sum of **One Hundred Fifty-one Thousand Two Hundred Ninety-one and 14/100 Dollars (U.S. $151,291.14)**, which is evidenced by the note, consumer loan agreement, or similar writing dated the same date as this Security Instrument (the "Note"), which provides for periodic payments ("Periodic Payments"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced to protect the security of this Security Instrument under the provisions of the section titled **Protection of Lender's Rights in the Property**; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower, in consideration of the debt, does hereby mortgage, grant and convey to Lender the following described property located in the **COUNTY** of **GULF**, State of Florida:

> Address: **280 Cary Whitfield Road, Wewahitchka, Florida 32465**
> Legal Description: **SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE            TOGETHER WITH A POWER DOUBLEWIDE MANUFACTURED HOME, VIN #'S CV03AL0260419A&B AND ALL ADDITIONS AND ACCESSIONS THERETO**
> Parcel ID/Sidwell Number: **01749-000R**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Borrower and Lender covenant and agree as follows:

773

**Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**Applicable Law.** As used in this Security Instrument, the term "Applicable Law" shall mean all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**Funds for Taxes and Insurance.** At Lender's request and subject to Applicable Law, Borrower shall pay to Lender on the day periodic payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of the paragraph titled **Mortgage Insurance.** in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another Applicable Law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless Applicable Law provides otherwise. Unless an agreement is made or Applicable Law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by Applicable Law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of Applicable Law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under the section titled **Acceleration; Notice of Default; Right to Cure,** Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by the Security Instrument.

**Application of Payments.** Unless Applicable Law provides otherwise, all payments received by Lender under sections titled **Payment of Principal and Interest; Prepayment and Late Charges** and **Funds for Taxes and Insurance** shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under the section titled **Funds for Taxes and Insurance;** third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in section titled **Funds for Taxes and Insurance,** or



if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. At the request of Lender, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with section titled **Protection of Lender's Rights in the Property**.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within the number of days prescribed by Applicable Law as set forth in a notice from Lender to Borrower that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The period of time for Borrower to answer as set forth in the notice will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the payments referred to in the sections titled **Payment of Principal and Interest; Prepayment and Late Charges** and **Funds for Taxes and Insurance** or change the amount of the payments. If under the section titled **Acceleration; Remedies** the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in section titled **Borrower's Right to Reinstate**, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall

© 2004-2006 Copyright Compliance Systems, Inc. EDC4-6F71 - 2006 05.166
Consumer Real Estate - Security Instrument DL2036

Page 3 of 8

www.compliancesystems.com
800-968-8522 - Fax 616-956-1868

comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this section, Lender does not have to do so.

Any amounts disbursed by Lender under this section shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or Applicable Law.

**Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless Applicable Law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within the minimum number of days established by Applicable Law after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

In. ::0920072617 Date:04-05.2007 Tim.:11:44
Bee Stamp Mort :      1,..02
Intang. Tax  :       04 28
DC.Rebecc. B. Morris,GILT County B:436 P:77F



Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the payments referred to in sections titled **Payment of Principal and Interest; Prepayment and Late Charges** and **Funds for Taxes and Insurance** or change the amount of such payments.

**Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**Successors and Assigns Bound; Joint and Several Liability; Accomodation Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of section titled **Transfer of the Property or a Beneficial Interest in Borrower.** Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note ("Accomodation Signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey that Accomodation Signer's interest in the Property under the terms of the Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Accomodation Signer's consent.

**Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**Governing Law; Severability.** This Security Instrument shall be governed by federal law and the laws of the state of Florida. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**Borrower's Copy.** Borrower shall be given one conformed copy of this Security Instrument.

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) unless the Note shows that Borrower's loan is assumable, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. If the Note shows that Borrower's loan is assumable, Borrower must obtain Lender's written permission for an assumption and follow any other requirements of Lender related to an assumption. If Borrower does not do so, Lender may require immediate payment in full of all sums secured by this Security Instrument.



© 2004-2006 Copyright Compliance Systems, Inc. EDC4-6F71 - 2006 05 166
Consumer Real Estate - Security Instrument DL2036

www.compliancesystems.com
800-968-8522 - Fax 616-956-1868

Inst:00200/2617 Date:04/26 2007 Time:11:44
Doc Stamp-Mort :    572,55
Intang. Tax   :    327,58
BLD of Rebecca L. Norris,GULF County B:436 P:373

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than the minimum number of days established by Applicable Law from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as Applicable Law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees to the extent permitted by law; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under the section titled **Transfer of the Property or a Beneficial Interest in Borrower**.

**Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects periodic payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with the section titled **Notices** and Applicable Law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by Applicable Law.

**Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the state of Florida that relate to health, safety or environmental protection.

**Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under the section titled Transfer of the Property or a Beneficial Interest in Borrower, unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than the minimum number of days established by Applicable Law from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument,**

© 2004-2006 Copyright Compliance Systems, Inc EDC4-6F71 - 2006 05 166
Consumer Real Estate - Security Instrument DL2036

www.compliancesystems.com
800-968-8522 - Fax 610-956-1868



779

foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. To the extent permitted by law, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**Oral Agreements Disclaimer.** This Security Instrument represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**Additional Provisions.** All payments received by lender shall be applied:  first, to interest due; second to principal due; third; to amounts payable under the section titled Funds for Taxes and Insurance; and fourth to any pre-payment and late charges due under the Note.  This provision shall control over the section titled "Application of Payments".

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in all pages of this Security Instrument and in any Rider executed by Borrower and recorded with it.

Kevin Chandler Martin    3/30/07
**Kevin Chandler Martin**    Date

Signed, sealed and delivered in the presence of:

Name    3.30.07    Name: Dina L Parker    03/30/07
Date    Date

779

780

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF    FLORIDA    )
                               )
COUNTY OF    **GULF**    )

The foregoing instrument was acknowledged before me this **30th day of March, 2007**, by **Kevin Chandler Martin**; who is personally known to me or who has produced necessary identification to confirm his/her identity. In witness whereof, I hereunto set my hand and my official seal.

My commission expires: 08-31-2009

Dina L Parker
Notary Public

```
DINA L. PARKER
MY COMMISSION # DD 452902
EXPIRES: August 31, 2009
Bonded Thru Notary Public Underwriters
```

(Official Seal)

Inst:0020012617 Date:04/26/2007 Time:11:44
Doc Stamp-Mort :    529.55
Intang. Tax :    302.52
DC,Rebecca L. Norris,GULF County B:436 P:780

THIS INSTRUMENT PREPARED BY:
**Prosperity Bank**
P.O. Drawer 1690
Saint Augustine, FL 32085

AFTER RECORDING RETURN TO:
**Prosperity Bank**
PO Drawer 1690
St. Augustine, FL 32085

780

© 2004-2006 Copyright Compliance Systems, Inc EDC4-6F71 - 2006 05 166
Consumer Real Estate - Security Instrument DL2036

Page 8 of 8

www.compliancesystems.com
800-968-8522 - Fax 616-956-1368

781

GCL #070032

## EXHIBIT "A"

Starting at the Northwest Corner of Hugh Lansden's property, run westward on South side of Highway 22, 721 feet; then turn Southwestward 908 feet to POINT OF BEGINNING. Begin and run in Southwest direction 1205 feet to half section line of Section 17, Township 4 South, Range 10 West; then run eastward along said half section line 865 feet to Hugh Lansden's Southeast Corner; then run in a North direction along the line of Hugh Lansden's property 1070 feet; then turn West and run 538 feet back to the POINT OF BEGINNING. This property is located on Section 17, Township 4 South, Range 10 West, Gulf County, Florida.

Also, that part of the following described lands not included in the above described tract:
Beginning at the Northwest Corner of Gordon C. Martin's property and run in a Southwestward direction along Gordon C. Martin's West line to half Section line of Section 17, Township 4 South, Range 10 West, 1205 feet; thence run Westward along half Section line to CCC Road No. 8 for 209 feet; thence run in a Northeast direction along the East side of CCC Road No. 8, 1208 feet; thence run in an Eastern direction back to the POINT OF BEGINNING, 215 feet. Containing 6 acres, more or less. This land lies in Section 17, Township 4 South, Range 10 West, Gulf County, Florida.

Inst:002007?G1? Date:04/26 2007 Time:11:44
Doc Stamp-Mort : 529.55
Intang.Tax    : 302.58
BLC BC,Rebecca L. Norris,GULF County B:438 P:781

781



Starting at the Northwest corner of Hugh Lansden's property, run westward on South side of Highway 22, 721 feet; then turn Southwestward 908 feet to the Point of beginning; begin and run in Southwest direction 1205 feet to 1/2 section line of Section 17, Township 4 South, Range 10 West; thence run Eastward along said 1/2 section line 865 feet to Hugh Lansden's Southeast corner, then run North direction along the line of Hugh Lansden's property 1070 feet; thence turn West and run 538 feet back to the Point of Beginning.  This property is located on Section 17, Township 4 South, Range 10 West, Gulf County, Florida.

AND ALSO

That part of the following described lands not included in the above described tract: Beginning at the Northwest corner of Gordon C. Martin's property and run in a Southwestward direction along Gordon C. Martin's West line to 1/2 section line of Section 17, Township 4 South, Range 10 West, 1205 feet; thence run Westward along 1/2 section line to CCC Road No. 8 for 209 feet; thence run in a Northeast direction along the East side of CCC Road No. 8, 1208 Feet; thence run in an Eastern direction back to the Point of Beginning 215 feet.  This property is located on Section 17, Township 4 South, Range 10 West, Gulf County, Florida.



**EXHIBIT**

**E**

# CONSUMER SECURITY AGREEMENT

**Prosperity Bank**
**100 South Park**
**St. Augustine, Florida 32086**
**(800)347-9680**

| LOAN NUMBER | AGREEMENT DATE |
|---|---|
| 7030 | March 30, 2007 |

## COLLATERAL OWNER INFORMATION

**Kevin Chandler Martin**
**PO Box 328**
**Wewahitchka, FL 32465**

**AGREEMENT.** For purposes of this document, the term "Agreement" is used when reference is made to this Consumer Security Agreement.

**LENDER.** "Lender" means **Prosperity Bank** whose address is **100 South Park, St. Augustine, Florida 32086** , its successors and assigns.

**DEBTOR.** For purposes of this Agreement, the term "Debtor" refers to any party who has an interest in the Collateral defined in the "DESCRIPTION OF COLLATERAL" provision below. The Debtor includes each party (Borrower) identified above. Throughout this Agreement, references to Debtor are to be construed as specifically defined by Article 9 (or equivalent) of the Uniform Commercial Code.

**OBLIGOR.** For purposes of this Agreement, the term "Obligor" refers to any party, with respect to an obligation secured by a security interest in the collateral, that: (i) owes payment or other performance of the obligation, or (ii) is otherwise accountable in whole or in part for payment or other performance of the obligation. Throughout this Agreement, references to Obligor are to be construed as specifically defined by Article 9 (or equivalent) of the Uniform Commercial Code.

**SECURITY INTEREST GRANT.** Debtor, in consideration of the Obligations to Lender, as defined in the "OBLIGATIONS" provision below, hereby agrees to all of the terms of this Agreement and specifically grants Lender rights to, and a continuing security interest in, the Collateral described in the paragraph(s) in the "DESCRIPTION OF COLLATERAL" provision below, the proceeds of the Collateral, the proceeds of hazard insurance and eminent domain or condemnation awards involving the Collateral, and all products of, accessions to, and interests in the Collateral that the Debtor either has now or acquires in the future. Debtor's continuing security interest grant to the Lender secures the payment of any present and future obligations as that term is defined below.

**OBLIGATIONS.** As used in this Agreement, the term "Obligations" means all of Obligor's or Debtor's responsibilities to Lender. These responsibilities arise under any and all agreements and documents evidencing the indebtedness related to this Agreement. In addition, these responsibilities continue in any future agreements for renewals, extensions or modifications, including obligations that arise by operation of law.

Obligations include all expenditures that Lender may make under the terms of this Agreement or for the benefit of Obligor and Debtor. Expenditures may include, among other things, interest, costs, and expenses, and also includes, to the extent permitted by law, attorneys' fees paid by the Lender or on behalf of the Lender to enforce the Obligations, or to protect or liquidate the Collateral. Any costs that may arise after the filing of any petition by or against Obligor or Debtor, even if they do not accrue because of the automatic stay provision of the Bankruptcy Code, are also considered "Obligations."

**DESCRIPTION OF COLLATERAL.** The Collateral covered by this Agreement (the "Collateral") is all of the Debtor's property described below. The Collateral includes all of the described property that the Debtor now owns, or may acquire or create in the future and any after-acquired consumer goods in which the Debtor acquires rights within 10 days of Lender giving value. The Collateral described below has the meanings contained in the Uniform Commercial Code as adopted in the state where the Lender is located.

    **Titled Vehicle.** "Titled Vehicle" consists of any and all vehicle(s) described below, and all additions and accessions to the vehicle(s), and any replacements and substitutions of the vehicle(s). It also includes all documents of title related to the vehicle(s) identified below, as well as all products, rents, and proceeds of the identified vehicle(s).

    TITLED VEHICLE DESCRIPTION: **2003 Power Doublewide, VIN CV03AL0260419B**

    MANUFACTURED HOUSING DESCRIPTION: model **Doublewide**, manufactured by **Power** in **2003**

The properties and interest in property described in the paragraphs above are hereinafter individually and collectively referred to as the "Collateral."

**WARRANTIES.** The Debtor warrants the following: Debtor has or will acquire free and clear title to all of the Collateral, unless otherwise provided in this Agreement, all of the Collateral exists and is actual property of the Debtor, and all of the Collateral has the value represented; the security interest granted to the Lender is a first security interest unless the Lender specifically agrees otherwise; Debtor will defend the Lender against claims and demands of any person as to title to the Collateral and the priority of Lender's security interest; Debtor will fully cooperate with the Lender in placing and maintaining Lender's lien or security interest on the Collateral, and specifically authorizes the Lender to file the necessary financing statements to perfect the Lender's security interest in the Collateral; Debtor will not allow any lien or other adverse claim or encumbrance of any kind against the Collateral; Debtor will immediately notify Lender of any existing or anticipated event that

has or may adversely affect the value of the Collateral, the Debtor's assets, or ability to perform its Obligations; Debtor will not change location of any Collateral without Lender's prior written consent, and will allow the Lender to inspect the Collateral at Lender's reasonable request.

**INSURANCE.** Debtor agrees to insure Collateral through a company of its choice, subject to Lender's reasonable approval. Lender will be named as loss payee, or at Lender's request, as mortgagee. The insurance will be comprehensive to the extent applicable. The Debtor will provide proof of insurance that is satisfactory to the Lender. All policies of insurance must provide that Lender will get a minimum of 10 days notice prior to cancellation. If the Debtor fails to obtain or maintain the required insurance, the Lender may do so at Debtor's expense.

**TAXES, LIENS, ETC.** The Debtor must pay all taxes and assessments on the Collateral as they become due. If the Debtor fails to pay any taxes or assessments, the Lender may choose to pay the taxes or assessments.

**INFORMATION AND REPORTING.** Debtor agrees to supply Lender with financial and other information and reports about the Debtor, any of Debtor's assets, the Collateral, or otherwise, as Lender may reasonably require from time to time.

**CROSS-COLLATERALIZATION.** Obligor and Debtor agree that any security interest provided in Collateral under this Agreement or any and all other indebtedness of Obligor or Debtor to Lender, whether or not such indebtedness is related by class or claim and whether or not contemplated by the parties at the time of executing each evidence of indebtedness, shall act as collateral for all said indebtedness. This cross-collateralization provision shall not apply to any Collateral that is/are household goods or a principal dwelling.

**CROSS-DEFAULT.** Any default of the Obligor or Debtor in the terms of any indebtedness to Lender shall constitute a default under this Agreement.

**DEFAULT; REMEDIES.** The Lender has the right to declare all Obligations due and immediately payable if a default exists. If any of the following events occur this Agreement will be in default: (a) failure to make required payments; (b) failure of the Obligor or Debtor to keep any of its agreements with the Lender; (c) making of any oral or written statement or assertion by the Obligor or Debtor to the Lender that is untrue when made; (d) the death of any natural person who has legal duties related to this Agreement, or of a partner of any partnership with legal duties related to this Agreement; (e) any change or event that affects the Obligor's type of business organization; (f) any decline in the value of the Collateral (other than normal wear and tear, or depreciation); and (g) any impairment of the Lender's rights under this Agreement.

If the Lender in good faith believes the Debtor is not able to meet its Obligations, or that any of the Collateral or the Lender's ability to resort to any Collateral is or will soon be impaired, the Lender may, to the extent permitted by law, declare this Agreement to be in default.

If a default occurs, the Lender may exercise any of the remedies described in this Agreement or other documents or agreements between the Lender and the Obligor or Debtor. The Lender also has the right to exercise any remedies provided for in the Uniform Commercial Code of the state where the Lender is located, and any other available legal or equitable remedies. If the Lender waives a specific default by the Obligor or Debtor, that waiver does not apply to any other default.

**FUTURE ADVANCES.** Future advances may be made by Lender under this Agreement to the extent allowed by law. In anticipation of future advances by Lender, the Obligor or Debtor authorize Lender to file any necessary financing statements to protect Lender's security interest.

**EXERCISE OF LENDER'S RIGHTS.** Any delay on the part of the Lender in exercising any power, privilege, or right hereunder, or under any other document executed by Obligor or Debtor to the Lender in connection herewith, shall not operate as a waiver thereof, and no single or partial exercise thereof or any other power, privilege, or right shall preclude other or further exercise thereof. The waiver by the Lender of any default of the Obligor or Debtor shall not constitute a waiver of subsequent default.

**CONTINUING AND UNCONDITIONAL AGREEMENT.** This Agreement is continuing and unconditional, and remains entirely effective until the Obligations are paid in full. If the Lender enters into other agreements with the Debtor, those agreements will not discharge this Agreement. The Lender's rights to the Collateral will not be altered if any of the Obligations against Obligor are determined to be invalid or unenforceable. This Agreement is enforceable even if the Obligor may assert any counterclaim on the underlying debt. Any stay, modification, discharge, or extension of the Obligor's Obligations that occur because of the Debtor's insolvency, bankruptcy, or reorganization will have no effect on the enforceability of this Agreement.

**NOTICES.** Unless otherwise required by applicable law, any notice or demand given by the Lender to the Obligor or Debtor is considered effective when it is deposited in the United States Mail with the appropriate postage, mailed to the address of the Obligor or Debtor given at the beginning of this Agreement.

**WAIVERS.** Debtor waives notice of Lender's acceptance of this Agreement, defenses based on suretyship, and to the fullest extent permitted by law, any defense arising as a result of any election by Lender under the Bankruptcy Code and the Uniform Commercial Code. Debtor and any maker, endorser, guarantor, surety, third-party pledgor, and other party executing this Agreement that is liable in any capacity with respect to the Obligations hereby waive demand, notice of intention to accelerate, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor, and any other similar notice whatsoever.

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Obligor or Debtor executing this Agreement is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Agreement is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Agreement without invalidating the remainder of either the affected provision or this Agreement.

**SURVIVAL.** The Lender's rights in this Agreement will continue in its successors and assigns. This Agreement is binding on all heirs, executors, administrators, assigns and successors of the Obligor or Debtor.

**ASSIGNABILITY.** The Lender may assign or otherwise transfer this Agreement or any of Lender's rights under this Agreement without notice to the Obligor or Debtor. Any assignee of the Lender has the same rights as the Lender. The Obligor or Debtor may not assign this Agreement, or any part of the Agreement without the express written consent of the Lender.

**AUTHORIZATIONS.** The Debtor authorizes the Lender to take whatever reasonable acts are necessary to protect the Collateral and the Lender's security interest in the Collateral including, without limitation, filing any financing statements necessary for Lender to perfect or protect Lender's security interest. The Debtor also authorizes the Lender to take any reasonable steps necessary to protect the Lender's right to repayment of any underlying or related indebtedness of the Obligor or Debtor.

**REIMBURSEMENT.** The Obligor or Debtor will reimburse the Lender for all reasonable expenses incurred by the Lender in protecting or exercising any of the Lender's rights related to the Obligations, Collateral, or otherwise. Reimbursement may be on demand, or, to the extent permitted by law, will become part of the Obligations.

**TERMINATION.** The Lender is under no obligation to provide a termination statement related to this Agreement for Collateral other than consumer goods, except upon receipt of an authenticated demand from the Debtor.

**GOVERNING LAW.** This Agreement has been delivered in the state of Florida and shall be construed in accordance with the laws of that state.

**HEADINGS AND GENDER.** The headings preceding text in this Agreement are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Agreement shall be construed to be of such gender or number as the circumstances require.

**MISCELLANEOUS.** Time is of the essence of this Agreement. Unless otherwise stated in this Agreement, all the terms in this Agreement have the meanings provided by the Uniform Commercial Code as it has been adopted in the state of Florida. Resolution of any ambiguities between the terms of this Agreement and any other loan agreement executed by the Obligor or Debtor in combination with this Agreement will be resolved using the terms of the loan agreement.

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**ACKNOWLEDGMENT.** Debtor acknowledges agreeing to all of the provisions in this Agreement, and further acknowledges receipt of a true and complete copy of this Agreement.

**IN WITNESS WHEREOF,** Debtor has executed this Agreement on the date and year shown below.

Kevin Chandler Martin    3/30/07
**Kevin Chandler Martin**                    Date

© 2004-2006 Copyright Compliance Systems, Inc. E176-4045 - 2006.03.67
Consumer Security Agreement - DL2009

www.compliancesystems.com
800-968-8522 - Fax 616-956-1868

**EXHIBIT F**

CONSUMER REAL ESTATE SECURED
BALLOON NOTE

Prosperity Bank
2606 South Highway 77
Lynn Haven, Florida 32444
(800)347-9680

| LOAN NUMBER | MATURITY DATE | PRINCIPAL AMOUNT | TRANSACTION DATE | INTEREST RATE |
|---|---|---|---|---|
| ████7030 | November 30, 2012 | $139,130.95 | October 25, 2011 | 4.250% |

LOAN PURPOSE: Modification

**BORROWER INFORMATION**

Kevin Chandler Martin
P.O. Box 328
Wewahitchka, FL 32465

**NOTE.** This Consumer Real Estate Secured Balloon Note will be referred to in this document as the "Note" or as the "Agreement."

**LENDER.** "Lender," "you," or "your" means **Prosperity Bank**, its successors and assigns, whose address is 2606 South Highway 77, Lynn Haven, Florida 32444 .

**BORROWER.** "Borrower," "I," "me," "my," or "mine" means each person who signs this Note.

**PROMISE TO PAY.** I promise to pay, according to the terms below, on or before the Maturity Date, the principal amount of One Hundred Thirty-nine Thousand One Hundred Thirty and 95/100 Dollars ($139,130.95) and all interest and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. I will make all payments under this Note in the form of cash, check or money order in lawful United States Dollars. I understand that Lender may transfer this Note. The Lender, or anyone who takes this Note by transfer and who is entitled to receive payments under this Note, is called the "Note Holder."

**THIS IS A BALLOON NOTE.** I understand that I must repay the entire unpaid balance of the loan including any permitted protective advances, charges and fees, together with interest then due, on the Maturity Date. You are under no obligation to refinance this Note at that time. I will, therefore, be required to make payment out of other assets that I may own, or I will have to find a lender, which may be you, willing to lend me money. If I refinance this loan at maturity, I may have to pay some or all of the closing costs normally associated with a new loan even if I obtain refinancing from you.

**PAYMENT SCHEDULE.** This loan will be paid according to the following schedule: 12 consecutive payments of principal and interest in the amount of $689.26 beginning on November 30, 2011 and continuing on the same day of each month thereafter. One final payment of $137,326.84 shall be due on November 30, 2012. All payments received by the Lender from the Borrower for application to the Loan may be applied to the Borrower's obligations under the Loan in such order as determined by the Lender.

**PAYMENTS.** My payments are to be made according to the payment schedule shown on this Note in lawful United States dollars until I have paid all of the principal and interest and any other charges that I may owe under this Note. I will make my payments at your address as shown on this Note or at a different place if required by you. You may accept late or partial payments as well as payments marked "payment in full" or with other restrictive endorsements without losing any of your rights under this Note and without affecting the unpaid balance of my loan as reflected on your records. You may apply my payments to amounts owing in whatever order you choose unless a specific order is required by law.

**INTEREST RATE AND SCHEDULED PAYMENT CHANGES.** The interest rate on this Note will be fixed at 4.250% per annum.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law.
Interest on this Note is calculated on a 365/360 day basis. The unpaid balance of this loan after Maturity, whether by acceleration or otherwise, shall be subject to a post-maturity rate of interest equal to 18.000% per annum.

**SECURITY TO NOTE.** Security (the "Collateral") for this Note is granted pursuant to the following security document(s):

- Security Instrument (Mortgage/Deed of Trust/Security Deed) in the amount of $151,291.14 dated 3/30/07 evidencing a lien on the property located at 280 Cary Whitfield Road Wewahitchka FL 32465.
- Security Agreement dated 3/30/07 evidencing security interest in 2003 Power Doublewide - ID#ID#CV03AL0260419 A&B.

The real property that is the subject of the Security Instrument shall be called "Property" in this Note. The Security Instrument protects you from possible losses which might result if I do not keep my promises under this Note, and describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.

I promise to pay any taxes or assessments on the Property as they come due. If I fail to pay them, you may pay them at your option to protect your interest and I agree to pay you for your expense. If I fail to pay you, and if permitted by law, you may add the protective advance to the balance owing under this Note.

© 2004-2010 Compliance Systems, Inc. 1615-6134 - 2010.09.263
Consumer Real Estate Secured Balloon Note - DL2024

Page 1 of 3

*KCM*

www.compliancesystems.com

**LATE PAYMENT CHARGE.** If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of 5% of the amount past due.

**PREPAYMENT PENALTY.** This Note may be prepaid, in full or in part, at any time, without penalty.

**HAZARD OR PROPERTY INSURANCE.** I will insure the Property through a company of my choice subject to your reasonable approval, as set forth in the Security Instrument. I will insure the Collateral through a company of my choice subject to your reasonable approval. You will be named as loss payee or, at your request mortgagee, for your protection. This insurance will protect the Collateral against loss by theft, fire and collision, perils within the term "comprehensive" to the extent applicable, and as otherwise required by you. It will also provide "all risks" Hull insurance as to any Collateral which is an aircraft or boat and related accessories when applicable. I will deliver satisfactory evidence of such insurance to you.

If I fail to insure the Collateral, you may do so at your option to protect your interest, and you may include any other coverage you feel appropriate, and I agree to pay you for any premiums. If I fail to pay you, and if permitted by law, you may add the protective advance to the balance owing under this Note. You may increase the amount of my regular payment in order to amortize the added insurance premiums by the time my final payment is due or, alternatively, I will end up having a larger final payment.

**MATURITY DATE.** The unpaid balance owed under this Note is due and payable on November 30, 2012 ("Maturity Date") regardless of any other provision of this Note or other related document.

**RETURNED CHECK FEE.** Checks or drafts in payment of amounts owing hereunder which are returned to Lender unpaid are subject to a returned check fee equal to: (a) the actual amount Lender is charged by the institution returning the check, draft, or order; or (b) $35.00; or (c) such other amount as shall be allowed by applicable law from time to time; whichever is the greatest; provided, however, the amount of the returned check fee will not exceed the maximum amount allowed by applicable law from time to time. At Lender's discretion, and after any notice required by applicable law, Lender may add such fee to the balance owing under this Note.

**DEFAULT.** I will be in default and you may, to the extent permitted by law, declare the entire unpaid balance of this loan immediately due and payable if: (a) I do not keep any promise or perform any obligation under this Note or any other contract or note that I may have with you; or (b) I give you false or misleading information in order to obtain, or while I owe on this loan; or (c) I should die or become involved in any bankruptcy, receivership, insolvency, or custodial proceedings brought by or against me; or (d) I should have a judgment or tax lien filed against me or any attachment or garnishment should be issued against any of my property or rights, specifically including anyone starting an action or proceeding to seize any funds that I may have on deposit with you; and/or (e) you, in good faith, reasonably believe my ability to repay the indebtedness owed under this loan, any Collateral, or your ability to resort to any Collateral, is or soon will be impaired, time being of the very essence.

If permitted by law, I waive any otherwise required notice of: presentment; demand; acceleration; and intent to accelerate.

If I am in default, to the extent permitted by law, without any prior notice or demand, unless required by law, I will have to pay the entire unpaid balance of this loan and you may invoke any other remedies permitted by applicable law or, at your option, I agree to give you the Collateral, if any. If I do not give you the Collateral, then to the extent permitted by law, you may enter the premises where the Collateral is located and take possession of it. You may assert the defense of a superior right of possession as the holder of a security interest to any allegation by me of wrongful taking and conversion. If permitted by law, I waive any right I might otherwise have to a hearing prior to a court issuing a replevin order in relation to the Collateral.

To the extent permitted by law, I agree to pay all reasonable agent or attorney fees incurred by you in collecting the debt evidenced by this Note or in the taking of the Collateral.

In the event of default, suit, and judgment against me, you have the right to attach or garnish wages. I expressly waive any limitation to the contrary unless the law prohibits such waiver.

You may sell or dispose of the Property and/or Collateral, in any manner permitted by law. After appropriate application of the proceeds of any sale, I will be liable to pay any resulting deficiency on my loan to you, to the extent permitted by law. In taking possession of the Collateral, you may come into possession of certain of my personal property. In that event, you may hold such property for whatever period of time you feel is reasonable. If I do not claim my property during such hold period, you may dispose of it without any liability to me.

**LIABILITY OF PARTIES; JOINT AND SEVERAL LIABILITY.** Every person signing this Note as a Borrower understands and agrees that they are jointly and individually obligated to pay all amounts owed according to the terms and conditions of this Note.

**NOTICE OF DEFAULT.** If I am in default, the Lender may send me a written notice, consistent with applicable law, if any, telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the then unpaid balance in full.

**SET OFF.** To the extent permitted by law, I give you the right to setoff any of my money or property which may be in your possession against any amount owing under this Note. This right of setoff does not extend to any IRA, Keogh accounts or similar tax deferred deposit accounts that I may have with you.

**OTHER PROMISES.** Reference is made to any related mortgage, trust deed, security deed, assignment, security agreement, pledge or similar document for other promises which I make to you and for terms and conditions governing my loan, which promises, terms and conditions are made a part of this Note as if set forth herein.

**FORBEARANCE.** You do not lose your rights under this Note if you delay enforcing them. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

© 2004-2010 Compliance Systems, Inc. 1613-6124 - 2010.06.263
Consumer Real Estate Secured Balloon Note - DL2024

Page 2 of 3            *KCM*

www.compliancesystems.com

**GIVING OF NOTICES.** Notice(s) must be given to me by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Lender a notice of my different address, unless applicable law requires a different method.

Notice(s) that must be given to the Lender will be given by mailing it by first class mail to the Lender at the address referred to above or at a different address if I am given a notice of that different address by the Lender.

**ASSIGNABILITY.** You may assign any of your rights under this Note without my consent. I may not assign my obligations.

**SEVERABILITY.** If any provision of this Note is determined to be unenforceable or invalid by a court of competent jurisdiction, all other provisions shall remain in full force and effect.

**HEADINGS.** The headings preceding text in this Note are for my general convenience in identifying subject matter, but have no limiting impact on the text which follows any of the particular heading.

**GOVERNING LAW.** I understand and agree that this Note will be governed by the laws of the State of Florida except to the extent that federal law controls.

**ATTORNEYS' FEES AND OTHER COSTS.** If legal proceedings are instituted to enforce the terms of this Agreement, Borrower agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees, to the extent permitted by law.

**DOCUMENTARY STAMP TAX.** The Florida Documentary Stamp Tax, as required by law, has been paid.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

By signing this Note, each Borrower acknowledges reading, understanding and agreeing to all its provisions.

_Kevin Chandler Martin_  10-27-11

Kevin Chandler Martin          Date

LENDER: Prosperity Bank

By: _Douglas Moore_        Date 10-27-11
Its: SVP

© 2004-2010 Compliance Systems, Inc. 1615-6134 - 2010.06.263
Consumer Real Estate Secured Balloon Note - DL2024

www.compliancesystems.com

| BALLOON PAYMENT NOTICE AND ACKNOWLEDGMENT | Prosperity Bank<br>2606 South Highway 77<br>Lynn Haven, Florida 32444<br>(800)347-9680 | |

| LOAN NUMBER | NOTICE DATE | MATURITY DATE |
|---|---|---|
| 7030 | October 25, 2011 | November 30, 2012 |

**BORROWER INFORMATION**

Kevin Chandler Martin
P.O. Box 328
Wewahitchka, FL 32465

**BORROWER.** Borrower means each person who signs this Notice, and will be referred to as "I", "my" or "me".

**LENDER.** "Lender" means Prosperity Bank whose address is 2606 South Highway 77, Lynn Haven, Florida 32444 , it's successors and assigns.

I am hereby notified that my loan with Lender is a "balloon" loan, which will result in my owing a large balloon payment that is payable in full on **November 30, 2012**, the Maturity Date. This means that I must repay the entire paid balance of my loan, including unpaid principal, accrued but unpaid interest, and other accrued and/or permitted charges, on the Maturity Date.

I acknowledge that Lender is not obligated to refinance my loan on the Maturity Date. I will, therefore, be required to make payment out of other assets that I may own, or I will have to find a lender, which may be Lender, willing to lend me the money.

I understand that if Lender decides to refinance my loan at or before the Maturity Date, the rate of interest and the terms of any such refinancing loan will be determined based on market conditions at that time. I also understand that I may have to pay some or all of the closing costs normally associated with a new loan, even if I obtain a refinancing loan from Lender.

I acknowledge that my loan with Lender is secured by real property, as evidenced by a Mortgage, Deed of Trust, Security Deed, or other similar document ("Security Instrument") given by me to Lender on **October 25, 2011**, the Transaction Date. I understand that if I fail to abide by the terms of my loan (as set forth in the Note, Security Instrument, and any other agreements that I may have with Lender), including my obligation to make the balloon payment, that I may lose my rights to the real property.

By signing below, I acknowledge reading, understanding and receiving a copy of this Balloon Payment Notice and Acknowledgment.

| _Kevin Chandler Martin_ | 10-27-11 | | | |
|---|---|---|---|---|
| Kevin Chandler Martin | Date | | | |

Witnessed by:

| _(signature)_ | 10-27-11 | | _Michelle Thompson_ | 10/27/11 |
|---|---|---|---|---|
| Name: | Date | | Name: | Date |


EXHIBIT
G

## COMMERCIAL PROMISSORY NOTE

**Prosperity Bank**
2606 South Highway 77
Lynn Haven, Florida 32444
(800)347-9680
www.prosperitybank.com

| LOAN NUMBER | NOTE DATE | PRINCIPAL AMOUNT | LOAN TERM | MATURITY DATE |
|---|---|---|---|---|
| 7030 | April 11, 2013 | $138,942.54 | 60 months | March 30, 2018 |

**LOAN PURPOSE: Renewal**

### BORROWER INFORMATION

Kevin Chandler Martin
P.O. Box 328
Wewahitchka, FL 32465

**NOTE.** This Commercial Promissory Note will be referred to in this document as the "Note."

**LENDER.** "Lender" means **Prosperity Bank** whose address is **2606 South Highway 77, Lynn Haven, Florida 32444** , its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity who signs this Note.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on or before the Maturity Date, the Borrower promises to pay the principal amount of **One Hundred Thirty-eight Thousand Nine Hundred Forty-two and 54/100 Dollars ($138,942.54)** and all interest and any other charges, including service charges, to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. The Borrower will make all payments in lawful money of the United States of America.

**PAYMENT SCHEDULE.** This loan will be paid according to the following schedule: 59 consecutive payments of principal and interest in the amount of **$701.05** beginning on **April 30, 2013** and continuing on the same day of each month thereafter. One final balloon payment shall be due on the Maturity Date in an amount equal to the then unpaid principal and accrued and unpaid interest. All payments received by the Lender from the Borrower for application to the Loan may be applied to the Borrower's obligations under the Loan in such order as determined by the Lender.

**INTEREST RATE AND SCHEDULED PAYMENT CHANGES.** The interest rate on this Note will be fixed at **4.250%** per annum.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. Interest on this Note is calculated on a Actual/360 day basis. The unpaid balance of this loan after Maturity, whether by acceleration or otherwise, shall be subject to a post-maturity rate of interest equal to **18.000%** per annum.

**LATE PAYMENT CHARGE.** If any required payment is more than **10** days late, then at Lender's option, Lender will assess a late payment charge of 5% of the amount past due.

**PREPAYMENT PENALTY.** This Note may be prepaid, in full or in part, at any time, without penalty.

**SECURITY TO NOTE.** Security (the "Collateral") for this Note is granted pursuant to the following security document(s):

- **Security Instrument(Mortgage/Deed of Trust/Security Deed) - 280 Cary Whitfield Road Wewahitchka FL 32465** dated **March 30, 2007.**
- **Security Agreement - 2003 Power Doublewide - ID#ID#CV03AL0260419 A&B** dated March 30, 2007.

**RIGHT OF SET-OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set-off any amount due and payable under this Note, whether matured or unmatured, against any amount owing by Borrower to Lender including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of set-off may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower or such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set-off has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant.

**DISHONORED ITEM FEE.** If Borrower makes a payment on the loan with a check or preauthorized charge which is later dishonored, a fee in the amount of **$35.00** will be charged.

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, mortgages, deeds of trust, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements,

assignments and any other documents or agreements executed in connection with this Note whether now or hereafter existing. The Related Documents are hereby made a part of this Note by reference thereto, with the same force and effect as if fully set forth herein.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Note immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Note or any other agreement: (a) Borrower's failure to make any payment on time or in the amount due; (b) any default by Borrower under the terms of this Note or any other Related Documents executed in connection with this Note; (c) any default by Borrower under the terms of any Related Documents in favor of Lender; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Related Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any Related Documents in favor of Lender entered into or delivered in connection with this Note terminates, attempts to terminate or defaults under any such Related Documents; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower. Upon the occurrence of an event of default, Lender may pursue any remedy available under any Related Document, at law or in equity.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Borrower executing this Note is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Note is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Note without invalidating the remainder of either the affected provision or this Note.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Note shall be binding on all heirs, executors, administrators, assigns and successors of Borrower.

**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Note or any of its rights and powers under this Note without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Note or any benefit accruing to it hereunder without the express written consent of the Lender.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW.** This Note is governed by the laws of the state of Florida except to the extent that federal law controls.

**HEADING AND GENDER.** The headings preceding text in this Note are for general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading. All words used in this Note shall be construed to be of such gender or number as the circumstances require.

**ATTORNEYS' FEES AND OTHER COSTS.** If legal proceedings are instituted to enforce the terms of this Note, Borrower agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees, to the extent permitted by law.

**WAIVER OF JURY TRIAL.** All parties to this Note hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Note or any other instrument, document or agreement executed or delivered in connection with this Note or the related transactions.

**DOCUMENTARY STAMP TAX.** The Florida Documentary Stamp Tax, as required by law, has been paid.

**By signing this Note, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt hereof.**

**Kevin Chandler Martin**    Date
Individually

**LENDER: Prosperity Bank**

By: George m. Perrett    Date 4-16-17

Its: U.P.


EXHIBIT

**BUSINESS LOAN AGREEMENT**

**Prosperity Bank**
2606 South Highway 77
Lynn Haven, Florida 32444
(800)347-9680
www.prosperitybank.com
NMLS Company Identifier: 523240
NMLS Originator Identifier: 718487

| AGREEMENT DATE | AGREEMENT/ACCOUNT NUMBER | |
|---|---|---|
| April 11, 2013 | 7030 | |

**BORROWER INFORMATION**

Kevin Chandler Martin
P.O. Box 328
Wewahitchka, FL 32465

Type of Entity: Individual
State of Residence: Florida

**AGREEMENT.** This Business Loan Agreement will be referred to in this document as the "Agreement." This Agreement is made by **Prosperity Bank** (Lender) **Kevin Chandler Martin** (Borrower). The consideration is the promises, representations, and warranties made in this Agreement and the Related Documents.

**DEFINITIONS.** These definitions are used in this Agreement.

"Collateral" means the Property that all Obligors pledge, mortgage, or give Lender a security interest in, regardless of where the Property is located and regardless of when it was or will be acquired, together with all replacements, substitutions, proceeds, and products of the Property.

"Events of Default" means any of the events described in the "Events of Default" section of this Agreement.

"Financial Statements" means the balance sheets, earnings statements, and other financial information that Obligors have, are, or will be giving to Lender.

"Indebtedness" means the Loan and all other loans and indebtedness of Borrower to Lender, including but not limited to Lender's payments of insurance or taxes, all amounts Lender pays to protect its interest in the Collateral, overdrafts in deposit accounts with Lender, and all other indebtedness, obligations, and liabilities of Borrower to Lender, whether matured or unmatured, liquidated or unliquidated, direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or hereafter arising.

"Loan" means the loan or loans Lender makes to Borrower under the note or notes dated the same date as this Agreement that Borrower gives to Lender and all amendments, extensions, renewals, and refinancing.

"Obligor" means any person having any obligation to Lender, whether for the payment of money or otherwise, under this Agreement or under the Related Documents, including but not limited to Guarantor and any other guarantors of the Indebtedness.

"Parties" means all Borrowers, Guarantors, and Hypothecators signing this Agreement.

"Party" means any Borrower, Guarantor, or Hypothecator signing this Agreement.

"Property" means the Parties' assets, regardless of what kind of assets they are.

"Related Documents" means all documents, promissory notes, security agreements, leases, mortgages, construction loan agreements, assignments of leases and rents, guaranties, pledges, and all other documents or agreements executed in connection with this Agreement. The term includes both documents existing at the time of execution of this Agreement and documents executed after the date of this Agreement.

**IDENTIFICATION OF INDEBTEDNESS.** The following loan and any amendments, extensions, renewals or refinancing (the "Loans") thereof are subject to this Agreement:

- Loan Number **2000007030** with a principal amount of **$138,942.54**

**BORROWER'S REPRESENTATIONS AND WARRANTIES.** Obligors represent and warrant to Lender the accuracy of the description of Borrower, the nature of Borrower's business shown above, and the statements made in this section. The representations and warranties will continue and remain in effect until all of the Indebtedness is fully paid to Lender and Obligors' obligations are fully performed.

**Borrower's Existence and Authority.** Borrower is duly formed and in good standing under all laws governing Borrower and Borrower's business, and the person or persons executing this Agreement have the power and authority to execute this Agreement and the Related Documents and to bind Borrower to the obligation created in this Agreement and the Related Documents.

**Financial Information and Filing.** All Financial Statements provided to Lender have been prepared and will continue to be prepared in accordance with generally accepted accounting principles, consistently applied, and fully and fairly present the financial condition of Obligors, and there has been no material adverse change in Obligors' business, Property, or condition, either financial or otherwise, since the date of Obligors' latest Financial Statements. Obligors have filed all federal, state, and local tax returns and other reports and filings required by law to be filed before the date of this Agreement and have paid all taxes, assessments, and other charges that are due and

payable prior to the date of this Agreement. Obligors have made reasonable provision for these types of payments that are accrued but not yet payable. Borrower does not know of any deficiency or additional assessment not disclosed in Borrower's books and records.

**Title and Encumbrances.** Obligors have good title to all of Obligors' assets. All encumbrances on any part of the Property were disclosed to Lender in writing.

**Compliance with General Law.** Borrower is in compliance with and will conduct its business and use its assets in compliance with all laws, regulations, ordinances, directives, and orders of any level of governmental authority that has jurisdiction over Borrower, Borrower's business, or Borrower's assets.

**Environmental Compliance.** Obligors are in compliance with all applicable laws and rules of federal, state, and local authorities affecting the environment, as all have been or are amended.

**No Litigation/No Misrepresentations.** There are no existing or pending suits or proceedings before any court, government agency, arbitration panel, administrative tribunal, or other body, or threatened against Borrower that may result in any material adverse change in Borrower's business, property, or financial condition, and all representations and warranties in this Agreement and the Loan Documents are true and correct and no material fact has been omitted.

**Transfer of Property. The Borrower shall not convey, encumber, lease or otherwise dispose of Borrower's interest in the Property without the consent of the Mortgagee, nor shall Borrower assign or transfer any rights under this Agreement.**

**Secondary Financing. The Borrower may not obtain secondary development or permanent financing or incur any additional debt without the Mortgagee's prior written consent.**

**Other Information.** From the date hereof until the Indebtedness is fully repaid and all of Obligors' obligations are fully performed and satisfied, the Parties cited below agree, unless otherwise consented to in writing by the Lender, they will submit the following:

Kevin Chandler Martin - **Unaudited** Personal Tax Returns within **90** days after the end of each filing due date (as such date may be extended in accordance with properly granted extensions) each year.

**EVENTS OF DEFAULT.** The occurrence of any of the following events will be an Event of Default.

**Noncompliance with Lender Agreements.** Default by Borrower under any provision of this Agreement, the Related Documents, or any other agreement with Lender.

**False Statements.** If an Obligor made or makes a false or misleading misrepresentation in the Related Documents, in any supporting material submitted to Lender or to third parties providing reports to Lender, or in Financial Statements given or to be given to Lender.

**Material Adverse Change.** Any material adverse change in the Borrower's business, financial condition, or the Property has occurred or is imminent; if the full performance of the obligations of any Obligor is materially impaired; or if the Collateral and its value or Lender's rights with respect thereto are materially impaired in any way. The existence or reasonable likelihood of litigation, governmental proceeding, default, or other event that may materially and adversely affect an Obligor's business, financial condition, or the Property.

**Insolvency or Liquidation.** An Obligor voluntarily suspends transaction of its business or does not generally pay debts as they mature. If an Obligor has or will make a general assignment for the benefit of creditors or will file, or have filed against it, any petition under federal bankruptcy law or under any other state or federal law providing for the relief of debtors if the resulting proceeding is not discharged within thirty days after filing. If a receiver, trustee, or custodian is or will be appointed for an Obligor.

**Default on Unrelated Debt.** If Borrower materially defaults under a provision of an agreement with a third party or if the indebtedness under such an agreement is accelerated.

**Judgments or Attachments.** If there is entered against an Obligor a judgment that materially affects the Borrower's business, financial condition, or the Property, or if a tax lien, levy, writ of attachment, garnishment, execution, or similar item is or will be issued against the Collateral or which materially affects Borrower's business, financial condition, or the Property, and which remains unpaid, unstayed on appeal, undischarged, unbonded, or undismissed for thirty days after it was issued.

**Collateral Impairment.** Lender has a good-faith belief that Lender's rights in the Collateral are or will soon be impaired or that the Collateral itself is or soon will be impaired.

**Termination of Existence or Change in Control.** If Borrower or Borrower's business is sold or merged or if Borrower or Borrower's business suspends business or ceases to exist.

**Insecurity.** If Lender has a good-faith belief that any Party is unable or will soon be unable to perform that Party's duties under this Agreement or under the Related Documents.

**Death.** The death of an individual who is an Obligor, a partner in a partnership that is an Obligor, a member in a limited liability company that is an Obligor, an officer of a corporation that is an Obligor, or an individual of similar position in any other type of business organization that is an Obligor.

**REMEDIES ON DEFAULT.**

**Remedies, No Waiver.** The remedies provided for in this Agreement, the Related Documents, and by law are cumulative and not exclusive. Lender reserves the right to exercise some, all, or none of its rights and reserves the right to exercise any right at any time that Lender has the right, without regard to how much time has passed since the right arose. Lender may exercise its rights in its sole, absolute discretion.

**Acceleration, Setoff.** Upon an Event of Default, the Loan and the Indebtedness may, at Lender's sole option, be declared immediately due and payable. Lender may apply Obligors' bank accounts and any other property held by Lender against the Indebtedness.

**CROSS-DEFAULT AND CROSS COLLATERALIZATION.** The default of any Party under this Agreement, the Related Documents, or under any other obligation to Lender is a default under this Agreement. It is the intent of all Parties to cross collateralize all of its Indebtedness and obligations to Lender, howsoever arising and whensoever incurred, except any obligation existing or arising against the principal dwelling of any Party.

**ATTORNEYS' FEES AND OTHER COSTS.** If legal proceedings are instituted to enforce the terms of this Agreement, Borrower agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees, to the extent permitted by law.

**EXPENSES.** Obligors agree to pay all of Lender's reasonable expenses incidental to perfecting Lender's security interests and liens, all insurance premiums, Uniform Commercial Code search fees, and all reasonable fees incurred by Lender for audits, inspection, and copying of the Obligors' books and records. Obligors also agree to pay all reasonable costs and expenses of Lender in connection with the enforcement of Lender's rights and remedies under this Agreement, the Related Documents, and any other agreement between one or more Obligors and Lender, and in connection with the preparation of all amendments, modifications, and waivers of consent with respect to this Agreement, including reasonable attorneys' fees.

**GOVERNING LAW/PARTIAL ILLEGALITY.** This Agreement and the Related Documents are and will be governed by, and the rights of the Parties will be determined by the laws of the state of Florida except to the extent that federal law controls. If any part, term, or provision of this Agreement is determined to be illegal or in conflict with state or federal law, the validity of the remaining portion or provisions of this Agreement will not be affected, unless the stricken portion or provision adversely affects Lender's risk of realizing Lender's anticipated return, in which case Lender may, in its sole discretion, deem the Loan matured.

**NOTICES.** All notices required under this Agreement must be in writing and will be considered given: (i) on the day of personal delivery, or (ii) one business day after deposit with a nationally recognized overnight courier service, or (iii) three business days after deposit with the United States Postal Service sent certified mail, return receipt requested. Any of these methods may be used to give notice. All notices must be sent to the party or parties entitled to notice at the addresses first set forth in this Agreement. Any Party may change its address for notice purposes on five days prior written notice to the other Parties.

**INTEGRATION AND AMENDMENT.** This Agreement and other written agreements among the Parties, including but not limited to the Related Documents, are the entire agreement of the Parties and will be interpreted as a group, one with the others. None of the Parties will be bound by anything not expressed in writing, and this Agreement cannot be modified except by a writing executed by those Parties burdened by the modification.

**FURTHER ACTION.** Obligors will, upon request of Lender, make, execute, acknowledge, and deliver to Lender the modified and additional instruments, documents, and agreements, and will take the further action that is reasonably required, to carry out the intent and purpose of this transaction.

**CONTINUING EFFECT.** Unless superseded by a later Business Loan Agreement, this Agreement will continue in full force and effect until all of the Obligors' obligations to Lender are fully satisfied and the Loan and Indebtedness are fully repaid.

**HEADINGS.** All headings in this Agreement are included for reference only and do not have any effect on the interpretation of this Agreement.

**COUNTERPARTS.** This Agreement may be executed by the Parties using any number of copies of the Agreement. All executed copies taken together will be treated as a single Agreement.

**TIME IS OF THE ESSENCE.** Time is of the essence in the performance of this Agreement.

**TRANSFERS.** Borrower may not assign or transfer its rights or obligations under this Agreement without Lender's prior written consent. Lender may transfer its interest in Lender's sole discretion. Borrower waives all rights of offset and counterclaim Borrower has against Lender. The purchaser of a participation in the loan may enforce its interest regardless of any claims or defenses Borrower has against Lender.

**JURISDICTION.** Obligors agree to waive any objection to jurisdiction or venue on the ground that Obligors are not residents of Lender's locality. Obligors authorize any action brought to enforce Obligors' obligations to be instituted and prosecuted in any state court having jurisdiction or in the United States District Court for the District that includes Lender's location as set forth at the beginning of this Agreement. Obligors authorize Lender to elect the court at Lender's sole discretion.

**WAIVER OF JURY TRIAL. All parties to this Agreement hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Agreement or any other instrument, document or agreement executed or delivered in connection with this Agreement or the related transactions.**

**ORAL AGREEMENTS DISCLAIMER.** This Agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

By signing this Agreement, Borrower acknowledges reading, understanding and agreeing to all its provisions and receipt of a copy hereof.

_Ken - Chandler Matin_          _4/16/13_

**Kevin Chandler Martin**          Date
Individually

**LENDER: Prosperity Bank**

_A. M. Lewis_          _4-16-13_

By: _George M. Barrett_          Date
Its: _V.P._

© 2004-2011 Compliance Systems, Inc. 0F58-5566 - 2011L1.0.195
Business Loan Agreement - DL4004

www.compliancesystems.com



**EXHIBIT**

I

(Space Above This Line For Recording Data)

# ASSIGNMENT OF LEASES AND RENTS

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") is made on **April 11, 2013**, between **Kevin Chandler Martin**, whose address is **P.O. Box 328**, Wewahitchka, Florida 32465 ("Assignor") and **Prosperity Bank** whose address is **2606 South Highway 77, Lynn Haven**, Florida 32444 ("Assignee"), which is organized and existing under the laws of the State of Florida. Assignor, in consideration of loans extended by Assignee up to a maximum principal amount of **One Hundred Thirty-eight Thousand Nine Hundred Forty-two and 54/100 Dollars ($138,942.54)** and for other valuable consideration, the receipt of which is acknowledged, hereby grants, transfers, assigns and sets over to Assignee all right, title and interest in and to all rents, issues, profits and privileges (now due or which may hereafter become due) of the following described real property:

 Address: **280 Cary Whitfield Road, Wewahitchka, Florida 32465**
 Legal Description: **Reference Original Mortgage**

("Property") which secures the following:

- Loan with a principal amount of **$138,942.54**

Assignor further grants all leases now or hereafter existing on all or any part of the Property, whether written or oral, or any letting or any agreement for the use of occupancy of any part of the Property which have been or which may hereafter be made or agreed to between Assignor and any other present, prior, or subsequent owner of the Property, or any interest therein, or which may be made or agreed to by Assignee, its successors or assigns, under the powers herein granted, and any tenant or occupant of all or any part of the Property (collectively, the "Leases" and each, a "Lease").

**RELATED DOCUMENTS.** The words "Related Documents" mean all promissory notes, security agreements, prior mortgages, prior deeds of trust, business loan agreements, construction loan agreements, resolutions, guaranties, environmental agreements, subordination agreements, assignments of leases and rents and any other documents or agreements executed in connection with this Assignment whether now or hereafter existing. The Related Documents are hereby made a part of this Assignment by reference thereto, with the same force and effect as if fully set forth herein.

**INDEBTEDNESS.** This Assignment secures the principal amount shown above as may be evidenced by a promissory note or notes of even or subsequent date hereto, including future advances made within 20 years from the date hereof up to a "Maximum Principal Indebtedness" of **One Hundred Thirty-eight Thousand Nine Hundred Forty-two and 54/100 Dollars ($138,942.54)** and every other indebtedness of any and every kind now or hereafter owing from Assignor to Assignee, howsoever created or arising, whether primary, secondary or contingent, together with any interest or charges provided in or arising out of such indebtedness, as well as the agreements and covenants of this Assignment and all Related Documents (hereinafter all referred to as the "Indebtedness"). Unless expressly stated herein to the contrary, nothing contained in this Assignment obligates

Assignee to make any future advances under the note(s) of even date herewith or to extend further credit (under separate notes or in any other manner).

**AMENDMENT OR MODIFICATION OF LEASES.** With respect to any Existing Leases or any Leases executed upon the Property after the creation of this Assignment and so long as the Indebtedness remains unpaid, Assignor shall not, without the written consent of Assignee: (a) cancel any Leases; (b) accept the surrender of any Leases; (c) modify or alter any Leases in any way, either orally or in writing; (d) reduce the rental set forth in any Leases; (e) consent to the assignment of any lessee's interest under any Leases, or to any subletting thereunder; or (f) make any other assignment, pledge, encumbrance, or any other disposition of any Leases, or of the rents, issues and profits derived from the use of the Property. Any of the above acts, if done without the written consent of Assignee, shall be null and void, and shall constitute a default under the Assignment and the Related Documents.

**REPRESENTATIONS OF ASSIGNOR.** Assignor hereby represents: (a) except for the Existing Leases, there are no leases, subleases or agreements to lease or sublease all of or any part of the Property; (b) the Existing Leases are valid and enforceable and no default exists under the Existing Leases; (c) Assignor is entitled to receive all the rents, issues and profits and to enjoy all the rents and benefits mentioned herein and assigned hereby; (d) said rents, issues and profits have not been sold, assigned, transferred or set over by any instrument now in force and shall not at any time during the life of this Assignment be sold, assigned, transferred or set over by Assignor, or any other person taking under or through Assignor except as pursuant to this Assignment; and (e) Assignor has the sole right to sell, assign, transfer, and set over the same and to grant and confer upon Assignee the rights, interests, powers, and authorities herein granted and conferred.

**COLLECTION OF RENTS.** Provided no Event of Default exists under the Indebtedness or any of the Related Documents, Assignee agrees not to demand from any lessor or lessee under the Existing Leases or from any other persons liable therefor, any of the rents, issues or profits hereby assigned, but shall permit Assignor to collect all such rents, issues and profits from the Property and the Existing Leases, so long as not collected more than one (1) month in advance of their due date.

**EVENTS OF DEFAULT.** The following events shall constitute default under this Assignment (each an "Event of Default"):

    (a)   Failure to make required payments when due under Indebtedness;
    (b)   Failure to perform or keep any of the covenants of this Assignment or a default under any of the Related Documents;
    (c)   The making of any oral or written statement or assertion to Assignee that is false or misleading in any material respect by Assignor or any person obligated on the Indebtedness;
    (d)   The death, dissolution, insolvency, bankruptcy or receivership proceeding of Assignor or of any person or entity obligated on the Indebtedness;
    (e)   Any assignment by Assignor for the benefit of Assignor's creditors;
    (f)   A material adverse change occurs in the financial condition, ownership or management of Assignor or any person obligated on the Indebtedness; or
    (g)   Assignee deems itself insecure for any reason whatsoever.

**REMEDIES.** Upon the occurrence of an Event of Default under this Assignment, the Indebtedness or the Related Documents, Assignee may declare all sums secured hereby immediately due and payable and may, at Assignee's option, without notice, either in Assignee's person or by agent and with or without bringing any action or proceeding, or by any receiver appointed by the court, enter upon, take possession of, and manage and operate the Property, and each and every part thereof, and in connection therewith, Assignee may make, enforce, and modify any of the Leases; fix or modify rents; repair, maintain and improve the Property; employ contractors, subcontractors, and workmen in and about the Property; obtain and evict tenants; in its own name, sue for and otherwise collect or reserve any and all rents, issues and profits, including those past due and unpaid; employ leasing agents, managing agents, attorneys and accountants in connection with the enforcement of Assignee's rights hereunder and pay the reasonable fees and expenses thereof; and otherwise do and perform any and all acts which

Assignee may deem necessary and appropriate in and about the Property for the protection thereof and of Assignee's rights hereunder and under the Related Documents, and any and all amounts expended by Assignee in connection with the foregoing shall constitute additional Indebtedness secured hereby to the extent permitted by law. Assignee shall apply any moneys collected, as aforesaid, less costs and expenses incurred, upon any Indebtedness secured hereby in such order and manner as Assignee may determine and to the extent permitted by law.

**NOTICES AND WAIVER OF NOTICE.** Unless otherwise required by applicable law, any notice or demand given by Assignee to any party is considered effective when it is deposited in the United States Mail with the appropriate postage, mailed to the address of the party given at the beginning of this Assignment unless an alternative address has been provided to Assignee in writing. To the extent permitted by law, Assignor waives notice of Assignee's acceptance of this Assignment, defenses based on suretyship, any defense arising from any election by Assignee under the United States Bankruptcy Code, Uniform Commercial Code, as enacted in the state where Assignee is located or other applicable law or in equity, demand, notice of acceleration, notice of nonpayment, presentment, protest, notice of dishonor and any other notice.

**TO THE EXTENT PERMITTED BY LAW, ASSIGNOR WAIVES ANY RIGHT TO NOTICE, OTHER THAN THE NOTICE PROVIDED ABOVE, AND WAIVES ANY RIGHT TO ANY HEARING, JUDICIAL OR OTHERWISE, PRIOR TO THE ASSIGNEE EXERCISING ITS RIGHTS UNDER THIS ASSIGNMENT.**

**PAYMENT OF RENTS TO ASSIGNEE.** All tenants or occupants of any part of the Property (including without limitation, all persons claiming any interest as lessor or lessee under any Leases) are hereby authorized to recognize the claims and demands of Assignee without investigation as to the reason for any action taken by Assignee or the validity of the amount of indebtedness owing to or the existence of any default hereunder or under the Related Documents, or the application of payments made by Assignee, of any amounts to be paid to Assignee. Assignee's sole signature shall be sufficient for the exercise of any right under this Assignment and Assignee's sole receipt given for any sums received shall be a full discharge and release therefor to any such tenant or occupant of the Property. Checks for all or any part of the rental collected under this Assignment shall be made to the exclusive order of Assignee.

**ASSIGNABILITY.** Assginee may assign or otherwise transfer this Assignment or any of Assignee's rights under this Assignment without notice to Assignor. Assignor may not assign this Assignment or any part of the Assignment without the express written consent of Assignee.

**ASSIGNEE'S RIGHTS AND REMEDIES.** The rights and remedies of the Assignee under this Assignment are cumulative, and are not in lieu of, but are in addition to all other rights and remedies which Assignee has under this Assignment and the Related Documents.

**SUCCESSORS AND ASSIGNS.** All covenants and agreements contained in this Assignment shall bind, and the rights hereunder shall inure to the respective successors and assigns of the Assignor and the Assignee.

**ENTIRE AGREEMENT; MODIFICATIONS; SEVERABILITY.** This Assignment shall constitute the entire agreement between Assignee and Assignor. Any modification of this Assignment shall be binding only if placed in writing and signed by the Assignee and Assignor. The invalidity of any provision of this Assignment shall not affect the validity of any other provision.

**PARAGRAPH HEADINGS; SINGULAR AND PLURAL TERMS.** The titles to the paragraphs of this Assignment are solely for the convenience of the parties and shall not be used to interpret this Assignment. Whenever used, the singular shall include the plural, the plural shall include the singular, and the use of any gender shall be applicable to all genders.

**ATTORNEYS' FEES AND OTHER COSTS.** If legal proceedings are instituted to enforce the terms of this Assignment, Assignor agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees, to the extent permitted by law.

**GOVERNING LAW.** This Assignment will be governed by the laws of the State of Florida including all proceedings arising from this Assignment.

**WAIVER OF JURY TRIAL.** All parties to this Assignment hereby knowingly and voluntarily waive, to the fullest extent permitted by law, any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Assignment or any other instrument, document or agreement executed or delivered in connection with this Assignment or the related transactions.

**ORAL AGREEMENTS DISCLAIMER.** This Assignment represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

By signing this Assignment, Assignor acknowledges reading, understanding, and agreeing to all its provisions.

_Kevin Chandler Martin_     4/17/13

Kevin Chandler Martin        Date
Individually

Witnessed by:

_[signature]_    4/17/2013    _[signature]_    04/17/2013

Name:        Date        Name:        Date

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF    FLORIDA    )
                     )
COUNTY OF    _Calhoun_    )

The foregoing instrument was acknowledged before me this _11th day of April_ , by Kevin Chandler Martin, who has produced _Drivers License_ as satisfactory evidence of his/her identity. In witness whereof, I hereunto set my hand and my official seal.

My commission expires:    _Gieda C. Drummond_

<div style="margin-left:2em;">
GIEDA C. DRUMMOND<br>
Commission # EE 020264<br>
Expires August 24, 2014<br>
Bonded Thru Troy Fain Insurance 800-385-7019
</div>

                         Identification Number

(Official Seal)

---

THIS INSTRUMENT PREPARED BY:        AFTER RECORDING RETURN TO:
**Prosperity Bank**                      **Prosperity Bank**
**100 Southpark Blvd.**                   **100 Southpark Blvd.**
**Saint Augustine, FL 32086**             **Saint Augustine, FL 32086**

© 2004-2011 Compliance Systems, Inc. 0857-0C55 - 2011L1.3.310
Assignment of Leases and Rents - DL4001           Page 4 of 4           www.compliancesystems.com



**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

IN RE:

**KEVIN CHANDLER MARTIN**                    **CASE NO.:  18-50157-KKS**
                                              **CHAPTER 7**

     **DEBTOR.**

_____/

## <u>AFFIDAVIT OF MOVANT IN SUPPORT</u><br><u>OF MOTION FOR RELIEF FROM STAY AS TO SURRENDERED PROPERTY</u>

STATE OF FLORIDA

COUNTY OF BAY

     BEFORE ME, the undersigned authority personally appeared <u>J. Christopher Barr, Esq.</u>

(hereinafter the "Affiant"), who upon being duly sworn and upon oath, deposes and says:

     1.     I am an attorney employed with the law firm of Bryant, Higby, & Barr, Chartered.

     2.     Bryant, Higby, & Barr, Chartered, represents Ameris Bank, a Georgia

corporation, successor in interest by merger of Prosperity Bank (hereinafter the "Movant") in the

Motion For *In Rem* Relief From Automatic Stay filed in this action by Movant.

     3.     The Affiant has reviewed the Debtor's Voluntary Petition filed in this action.

According to Debtor's Statement of Intentions, the Debtor intends to surrender the following real

property:

     See attached **Exhibit A**.

4.      As of the date of this Affidavit, the Affiant has examined the CM/ECF docket for this cause of action and has found no entries or documents filed evidencing a contrary intent on the party of the Debtor.

FURTHER AFFIANT SAYETH NOT.

J. CHRISTOPHER BARR

State of FLORIDA

County of BAY

The forgoing instrument was sworn and acknowledged before me this 13th day of July, 2018, by J. Christopher Barr as counsel for Ameris Bank, a Georgia corporation, who is personally known to me or who produced _____ as identification.

SEAL

Notary Public

Print Name

JULIE K. ARMSTRONG
Commission # FF 179313
Expires November 25, 2018
Bonded Thru Troy Fain Insurance 800-385-7019

2



Starting at the Northwest corner of Hugh Lansden's property, run westward on South side of Highway 22, 721 feet; then turn Southwestward 908 feet to the Point of beginning; begin and run in Southwest direction 1205 feet to 1/2 section line of Section 17, Township 4 South, Range 10 West; thence run Eastward along said 1/2 section line 865 feet to Hugh Lansden's Southeast corner, then run North direction along the line of Hugh Lansden's property 1070 feet; thence turn West and run 538 feet back to the Point of Beginning.  This property is located on Section 17, Township 4 South, Range 10 West, Gulf County, Florida. AND ALSO
That part of the following described lands not included in the above described tract: Beginning at the Northwest corner of Gordon C. Martin's property and run in a Southwestward direction along Gordon C. Martin's West line to 1/2 section line of Section 17, Township 4 South, Range 10 West, 1205 feet; thence run Westward along 1/2 section line to CCC Road No. 8 for 209 feet; thence run in a Northeast direction along the East side of CCC Road No. 8, 1208 Feet; thence run in an Eastern direction back to the Point of Beginning 215 feet.  This property is located on Section 17, Township 4 South, Range 10 West, Gulf County, Florida.